# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD., ) ) ) Plaintiff, ) ) v. ) ) WHEELS MSM CANADA, INC., and ) TIGERS EXPRESS, INC., ) ) Defendants. ) | No. 16 C 4638 Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mitsui Sumitomo Insurance Company, Ltd. ("Mitsui"), as subrogee of its insured Sharp Electronics Corporation ("Sharp"), brings this action against defendants Wheels MSM Canada, Inc. ("Wheels") and Tigers Express, Inc. ("Tigers"), two trucking companies engaged to transport Sharp's goods, for breach of contract and for causing injury to property in violation of the Carmack Amendment, 49 U.S.C. § 14706. Wheels moves to dismiss the claims against it. For the following reasons, the motion is denied.

## BACKGROUND

In February 2014, Sharp engaged Wheels to perform "motor carrier transportation and other services" by transporting 442 packages of various Sharp electronics products ("the Cargo") from Memphis, Tennessee to Hickory Hills, Illinois. (Am. Compl. ¶¶ 7, 12, ECF No. 14.) Wheels issued a bill of lading, and it subcontracted carriage of the Cargo to another entity, which in turn subcontracted carriage of the Cargo to Tigers. (*Id.* ¶¶ 13-14.) A driver for Tigers picked up the Cargo in Memphis on March 13, 2014, but a portion of the Cargo was damaged en route

when Tigers's driver fell asleep at the wheel in Johnson County, Illinois, causing the truck to collide with another vehicle, flip on its side, and skid over 100 feet. (*Id.* ¶¶ 14-15.)

Sharp submitted a claim for the damage to Mitsui, which paid Sharp $37,450.15 for the loss, and thereby became subrogated to Sharp's rights with respect to the loss. (*Id.* ¶ 16.) Mitsui now seeks to recover the $37,450.15 (1) from both defendants under the Carmack Amendment to the Interstate Commerce Commission Act, which permits a person to whom a bill of lading is issued to recover for any "loss or injury to the property caused by" the carrier or carriers, 49 U.S.C. § 14706 (Count I); and (2) from Wheels under a breach of contract theory because Wheels agreed to deliver the Cargo to its destination in good condition, but failed to do so (Count II). Wheels moves to dismiss both counts.

## **ANALYSIS**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing

*Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

**I.     CARMACK AMENDMENT**

Wheels contends that the Carmack Amendment claim should be dismissed as to Wheels because Wheels was not actually carrying the Cargo at the time it was damaged; rather, it had subcontracted with another carrier, which had subcontracted with Tigers to transport the Cargo, and the accident was entirely the fault of Tigers, whose driver fell asleep at the wheel. Under those circumstances, Wheels argues, it cannot have been at fault for the accident, and Mitsui's only remedy is against Tigers, the party who was at fault.

This argument is meritless because, under the Carmack Amendment, an originating carrier (*i.e.*, one that has issued a bill of lading) is liable for damage to the cargo regardless of whether it was the carrier who was actually carrying the goods at the time they were damaged:

> The Carmack Amendment was enacted to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson,* 339 U.S. 113, 119 (1950). To claim the benefits of the Carmack Amendment a shipper must sue either ***the carrier issuing the bill of lading*** or the carrier delivering the goods to the final destination. Either of these carriers ***will be liable for damage caused by any carrier used during the trip***. The initiating or delivering carrier may in turn seek recovery from the carrier responsible for the loss.

*S.C. Johnson & Son, Inc. v. Louisville & Nashville R. Co.*, 695 F.2d 253, 256-57 (7th Cir. 1982)[1] (internal citations altered or omitted) (emphasis added); *see also Se. Freight Lines*, 63 Comp.

---

[1] The Court notes that although *S.C. Johnson* cites the Carmack Amendment at 49 U.S.C. § 11707, Congress recodified the Carmack Amendment at 49 U.S.C. § 14706 in 1996, without making any substantive change. *See Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.4 (2d Cir. 2001).

3

Gen. 242, 245 (Mar. 6, 1984) ("[The Carmack Amendment] permits a claim for damage to be filed against either the originating or delivering carrier, and either is liable for the full loss irrespective of who may have possession of the goods when damaged."). Because the Carmack Amendment imposes "something close to strict liability upon originating . . . carriers," *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 9 (1st Cir. 2003), Wheels cannot escape liability to Mitsui (via Sharp) by pointing at Tigers. If Wheels believes that Tigers is at fault, it may seek recovery from Tigers under 49 U.S.C. § 14706(b), which permits the "carrier issuing the bill of lading . . . to recover from the carrier over whose line or route the loss or injury occurred the amount required to be paid to the owners of the property," *see PNH Corp. v. Hullquist Corp.*, 843 F.2d 586, 588-89 (1st Cir. 1988), but Wheels remains liable to Mitsui.

Wheels insists, citing *Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 634 (7th Cir. 2001), that it cannot be liable under the Carmack Amendment if it was not at fault, and it cannot have been at fault if the allegations of the complaint are true. But Wheels misreads *Pizzo*. It relies on passages that, if read out of context, may seem to suggest that a carrier need only demonstrate that it was "free from fault," 258 F.3d at 633, or "not to blame," *id.* at 634, but read in their full context, those passages merely recognize (if implicitly) that the Carmack Amendment permits a blameless originating carrier "to put the finger on the guilty carrier" by seeking indemnity from a negligent downstream carrier under 49 U.S.C. 14706(b). *See Pizzo*, 258 F.3d at 634 (citing *PNH Corp.*, 843 F.2d at 588-89). The Seventh Circuit in *Pizzo* explicitly recognized that the very purpose of the Carmack Amendment is to relieve shippers of the burden of searching out a particular negligent carrier from among the numerous carriers handling the shipment by permitting the shipper to sue the carrier that issued the bill of lading; it then falls to the carriers to sort out among themselves who was to blame. *Pizzo*, 258 F.3d at 634.

4

Under the Carmack Amendment, a carrier can only escape liability entirely by demonstrating "***both*** that it was free from negligence ***and*** that the damage to the cargo was due to one of the excepted causes" that relieved the carrier of liability at common law, prior to codification in the Carmack Amendment, which are "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (emphasis added). There is no suggestion that any of the excepted causes might have played a role in this case.

Even if the carrier's lack of negligence were determinative by itself, it is the carrier's burden to prove that it was free from negligence. *Pizzo*, 258 F.3d at 634; *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 372 (7th Cir. 2000). Wheels cannot carry this burden at the pleading stage, prior to discovery, and it is not clear on the face of the complaint that Wheels bears no responsibility for Tigers's negligence, *see Custom Cos., Inc. v. Azera, LLC*, No. 12 C 2590, 2015 WL 4467020, at *4 (N.D. Ill. July 21, 2015). Mitsui argues that Wheels is liable because it contractually assumed "responsibility and liability" for the acts of any person or entity "utilized by" Wheels to "fulfill its obligations" under its agreement with Sharp (Am. Compl. ¶ 11), and the Court cannot assess the merits of this argument at the pleading stage. *See Project Hope v. M/V IBN SINA*, 250 F.3d 67, 76 (2d Cir. 2001) ("While the Carmack Amendment governs the liability of carriers to the original shipper of the goods . . . , the situation is different regarding the liability of the two carriers *inter sese* . . . .") *cited in Pizzo*, 258 F.3d at 634.

Wheels's motion to dismiss the Carmack Amendment claim is denied.

## II.  BREACH OF CONTRACT

Wheels argues that the Court should grant Mitsui's state-law breach of contract claim because it is preempted by the Carmack Amendment. Mitsui argues that it pleads the breach of

contract claim only in the alternative so that, if the Court ultimately determines Wheels was not acting as a "carrier" within the meaning of the Carmack Amendment but as a broker, and if the Court further rules that the Carmack Amendment does not apply to brokers, as other courts of this district have done, *see Mach Mold Inc. v. Clover Assocs., Inc.*, No. 03 C 7757, 2004 WL 2005812, at *3-4 (N.D. Ill. Sept. 1, 2004); *Custom Cartage, Inc. v. Motorola, Inc.*, No. 98 C 5182, 1999 WL 89563, at *3 (N.D. Ill. Feb. 16, 1999), Mitsui may fall back on the breach of contract claim.

Neither the Supreme Court nor the Seventh Circuit has directly addressed Mitsui's practice of alternatively pleading Carmack Amendment claims and state-law claims, but in the past, district courts in this circuit have both rejected it, *see Mitsui Sumitomo Ins. Co. of Am. v. Basic Enterprises, Inc.*, No. 1:14CV133, 2014 WL 4407645, at *2-3 (N.D. Ind. Sept. 8, 2014) (holding that state-law claim is preempted, regardless of whether defendant is broker or carrier, unless plaintiff alleges a "separate and distinct harm" from the Carmack Amendment claim), and accepted it, *see, e.g., Sompo Japan Ins. Co. of Am. v. B&H Freight, Inc.*, No. 16 C 355, 2016 WL 1392339, at *2-3 (N.D. Ill. Apr. 8, 2016) (Carmack Amendment does not apply to brokers and therefore does not preempt state-law claims against defendant if defendant is a broker). The weight of authority favors Mitsui's position, and the court is persuaded by the reasoning of those decisions consistent with it.

Wheels argues that, even if it is true that the Carmack Amendment does not apply to brokers, there is no likelihood that this Court will find that Wheels was a broker rather than a carrier merely because it did not actually transport the Cargo itself. Wheels contends that it was plainly a carrier because it identified itself as a "carrier" in the bill of lading it issued and it identified itself as a "carrier" in its written agreement with Sharp. The Court recognizes that

Wheels would likely face an uphill battle if it were to attempt to prove that it was a broker, not a carrier; a number of district courts have rejected similar arguments in similar circumstances. *See, e.g., Advantage Freight Network v. Sanchez*, No. CV-F-07827LJOSMS, 2008 WL 4183987, at *3 (E.D. Cal. Sept. 10, 2008) (citing cases). Still, Wheels's status as a "carrier" or "broker" depends not on the label the parties put on its services but on the nature of their relationship, *see Travelers Ins. v. Panalpina Inc.*, No. 08 C 5864, 2010 WL 3894105, at *5 (N.D. Ill. Sept. 30, 2010) (citing cases), and it would be premature to decide now, before Wheels has even answered, let alone engaged in discovery, whether to classify Wheels as a broker or a carrier. *See Mach Mold*, 2004 WL 2005812, at *3-4 (denying motion to dismiss state-law claim on ground that it was preempted by Carmack Amendment claim because it would be inappropriate at pleading stage to render a "ruling on the merits of this dispositive issue (*i.e.*, whether [the defendant] was a broker or carrier"). Such a ruling is more appropriate for the summary judgment stage. *See Mach Mold Inc. v. Clover Associates, Inc.*, 383 F. Supp. 2d 1015, 1029-30 (N.D. Ill. 2005) (concluding at the summary judgment stage that defendant was a carrier, not a broker). Wheels's motion to dismiss the breach of contract claim is denied.

## **CONCLUSION**

For the reasons set forth above, the Court denies defendant Wheels's motion to dismiss [16].

**SO ORDERED.**                          **ENTERED:** October 28, 2016

                                                         **HON. JORGE L. ALONSO**
                                                         **United States District Judge**